IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

William Morgan Fussell,                      )
                                             )      2:11-cv-02766-GEB-EFB
                        Plaintiff,           )
                                             )
              v.                             )      **TENTATIVE RULING** ISSUED IN
                                             )      ADVANCE OF JANUARY 22, 2013
AMCO Insurance Company, a                    )      HEARING
corporation,                                 )
                                             )
                        Defendant.           )
_____     )

        Defendant AMCO Insurance Company ("Defendant" or "AMCO")

seeks summary judgment in this declaratory relief action, under Federal

Rule of Civil Procedure ("Rule") 56. This action is comprised of

Plaintiff's request for a judicial declaration that Defendant is

obligated to pay Plaintiff's uninsured motorist bodily injury claim for

injuries Plaintiff allegedly sustained when he was a passenger in his

spouse's automobile. Germane to the parties' insurance coverage dispute

is the issue of whether an exclusionary clause in Plaintiff's insurance

policy excludes Plaintiff's claim since he was married when the accident

occurred. The clause prevents recovery for injuries incurred in a

spouse's automobile unless that automobile is listed in the policy;

Plaintiff was single at the inception of the policy, married his spouse

during the policy period, and was married at the time of the accident.

Plaintiff argues he should be considered to have been unmarried when the

accident occurred since he did not inform AMCO about his marriage, and

that he should only be treated as being married after the policy ends.

Since the Court conducted independent research on this dispute and found authority not cited by either party, this tentative ruling issues, and each party is provided an opportunity to address the tentative ruling in supplemental briefs.

### I. LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248). To meet this burden, the movant must "inform[] the district court of the basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotation marks omitted).

If the movant satisfies its "initial burden," "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)). The nonmoving party "cannot 'rest upon the mere allegations or denials of the adverse party's pleading' but must instead produce evidence that 'set[s] forth specific facts showing that there is a genuine issue for trial.'" Estate

of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Anderson, 477 U.S. at 248). In evaluating the motion under Rule 56, "evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." Sec. & Exch. Comm'n v. Todd, 642 F.3d 1207, 1215 (9th Cir. 2011) (citing Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001)).

Further, Local Rule 260(b) requires:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

E.D. Cal. L. R. 260(b). If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

## II. BACKGROUND AND UNDISPUTED FACTS

Plaintiff alleges in his complaint that he acquired a one-year auto liability insurance policy ("Policy I") from AMCO on or about October 7, 2009. (Complaint ¶ 5, ECF No. 1, Ex. A.) Plaintiff also alleges Policy I was in full force and effect on or about June 27, 2010, when he was injured in an automobile accident with an uninsured motorist, at which time has was a passenger in a vehicle owned and driven by his wife, Guadalupe Perez ("Perez"). (Id. ¶ 8.) Plaintiff alleges that Policy I covers him for the injuries he sustained in that

accident that have not already been covered by Perez's separate auto liability insurance policy ("Policy II"). (See id. ¶¶ 9-14.)

The following uncontroverted facts exist under Local Rule 260. "AMCO issued personal auto policy number PPA 0025867044-0 [Policy I] to [P]laintiff William Morgan Fussell ("Fussell") for the policy period of October 7, 2009 through October 7, 2010 . . . ." (Def.'s Sep. Stmt. of Undisputed Facts in Support of Mot. for Summ. Judg. ("Def.'s SUF") # 1, ECF No. 9, Ex. 4; Pl.'s Response in Opp'n to Def.'s SUF ("Pl.'s SUF") 1, ECF No. 10, Ex. 2.) "Policy [I] includes coverage for Uninsured Motorists Bodily Injury with limits of $500,000.00 per person and $500,000.00 per accident." (Def.'s SUF # 2; Pl.'s SUF # 2.) "[Plaintiff] is the only 'Insured Driver' listed on . . . Policy [I]'s Declarations, while the only 'Insured Vehicle' is a '2006 Ford Explorer X.'" (Def.'s SUF # 3; Pl.'s SUF # 3.)

Plaintiff married Perez on December 31, 2009. (Def.'s SUF # 9; Pl.'s SUF # 9.) "On June 27, 2010, [Plaintiff] was a passenger in a 2008 BMW 328i (the "BMW")[,] . . . owned . . . sole[ly] . . . by Perez . . .[, when t]he BMW was involved in a two-car motor vehicle accident [(the "June 27 accident")]." (Def.'s SUF # 10-12, 14; Pl.'s SUF # 10-12, 14.) "At the time of the [June 27 accident], [Plaintiff] and Perez shared a residence at 4178 Arenzano Way, El Dorado Hills, CA 95762." (Def.'s SUF # 13; Pl.'s SUF # 13.) "At the time of the [June 27 accident], Perez was insured under a separate policy of insurance issued by AMCO [(Policy II)] that had uninsured motorist coverage limits of $100,000.00 per person." (Def.'s SUF # 15; Pl.'s SUF # 15.) The "BMW was never listed as a covered vehicle under [Policy I]." (Def.'s SUF # 16; Pl.'s SUF # 16.)

//

"On or about April 6, 2011, [Plaintiff] presented a claim for uninsured motorists benefits under [Policy I]." (Def.'s SUF # 17; Pl.'s SUF # 17.)

> AMCO investigated and eventually denied the claim on April 21, 2011 based on the terms of the exclusion for "[U]ninsured Motorists Coverage for 'bodily injury' sustained by any 'insured' . . . [w]hile 'occupying' . . . [a]ny motor vehicle . . . owned by you or any 'family member' which is not insured for this coverage under this policy . . ." since AMCO's investigation revealed that at the time of the [June 27] accident, [Plaintiff] was married to Perez, shared a residence with Perez and occupied the BMW . . . that was not listed as a covered vehicle [under] Policy [I].

(Def.'s SUF # 18-19; Pl.'s SUF # 18-19.)

### III. RELEVANT POLICY PROVISIONS

Policy I "Declarations . . . identify various 'Forms and Endorsements' that are a part of . . . Policy [I] including the 'Personal Auto Policy' form and 'Uninsured Motorists Coverage — California' endorsement." (Def.'s SUF # 4; Pl.'s SUF # 4.) Policy I also contains the following language:

> A. Throughout this policy, "you" and "your" refer to:
>    1. Any "named insured" shown in the Declarations; and
>    2. Any spouse if a resident of the same household.
> B. "We", "us" and "our" refer to the Company providing this insurance.
>
> . . .
>
> Other words and phrases are defined. They are in quotation marks when used.
> D. "Bodily injury" means bodily harm, sickness or disease, including death that results.
>
> . . .
>
> J. "Your covered auto" means:
>    1. Any vehicle shown in the Declarations.

(Personal Auto Policy AA 0001 ("Policy I"), at page 2 of 15, ECF No. 1, Ex. A, as amended by Amendment of Policy Provisions — California AA 0169 ("Policy Amendment"), at page 1 of 4, ECF No. 1, Ex. A.)[1] Policy I's Endorsement provides uninsured motorists coverage as follows:

> **INSURING AGREEMENT**
> A.   We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:
> 1. "Bodily injury" sustained by an "insured" and caused by an accident . . .
>
> . . .
>
> B. "Insured" as used in this endorsement means:
> 1. You or any "family member"
> . . .
>
> D. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:
> 1. To which no liability bond or policy applies at the time of the accident.
> 2. Which, with respect to damages for "bodily injury" only, is an underinsured motor vehicle. An underinsured motor vehicle is one which a liability bond or policy applies at the time of the accident but its limit of liability is less than the limit of liability for this coverage.

---

[1]    AMCO's Statement of Undisputed Facts fails to account for amendments to policy language made in attachments to the original policy and therefore quotes non-applicable language from the policy. (See Def.'s SUF.) Plaintiff admits this incorrect language in its Statement of Undisputed Facts. (Pl.'s SUF.) Non-applicable policy language is also misquoted in the April 21, 2011 denial letter from AMCO to Plaintiff. (Decl. of Phillip Collins ("Collins Decl.") in Supp. of Def.'s Mot. for Summ. Judg. ("Def.'s Mot."), ECF No. 9-3, Ex. A.) In addition, AMCO attaches an incorrect version of the policy to its Declaration of Leo Ashley III, (see Decl. of Leo Ashley III ("Ashley Decl.") in Supp. of Def.'s Mot., ECF No. 9-2, Ex. A [second exhibit labeled "A"]), which Plaintiff then erroneously quotes from and cites to in its opposition. (See Pl.'s Response in Opp'n to Def.'s Mot. ("Pl.'s Opp'n").) The policy version attached to the Ashley Declaration covers the period from October 7, 2010, until October 7, 2011, so it does not apply to the motor vehicle accident underlying this claim, which occurred on June 27, 2010. (See Ashley Decl., Ex. A; Def.'s SUF # 12; Pl.'s SUF # 12.) The quoted language in this order is from the correct version of the policy and its amendments (covering October 7, 2009, until October 7, 2010), which are attached to Plaintiff's Complaint. (ECF No. 1, Ex. A.)

(Policy I, at page 7 of 15, as amended by Uninsured Motorists Coverage — California, AA 0487 ("UIMC Amendment"), at page 1 of 5, ECF No. 1, Ex. A.) The Endorsement contains the following exclusion (the "Policy I Exclusion") under the bold heading **"EXCLUSIONS"**: "We do not provide Uninsured Motorists Coverage for 'bodily injury' sustained by any 'insured' . . . [w]hile 'occupying' or when struck by . . . [a]ny motor vehicle . . . owned by you or any 'family member' which is not insured for this coverage under this policy." (Id., as amended by UIMC Amendment, at page 2 of 5.)

The parties argue different positions on the Policy I Exclusion on which AMCO relies in support of its claim denial decision. The essence of their dispute concerns usage of the term "you" in Policy I, which is defined as follows: "Throughout this policy, 'you' and 'your' refer to: 1. Any 'named insured' shown in the Declarations; and 2. Any spouse if a resident of the same household." (Policy I, at page 2 of 15, as amended by Policy Amendment, at page 1 of 4.) Plaintiff argues the term "you" has the definition it had at the inception of Policy I, whereas Defendant argues the term has the definition it had at the time of the June 27 accident. Specifically, under Plaintiff's interpretation of "you," Plaintiff and Perez were unmarried for purposes of Policy I since they were unmarried at the inception of Policy I, thereby permitting Plaintiff to recover under Policy I; under Defendant's interpretation of "you," Plaintiff and Perez were married for purposes of Policy I, thereby preventing Plaintiff from recovering under Policy I.

## IV. DISCUSSION

An insurance policy is "construed under the same rules that govern the interpretation of other contracts. Accordingly, [an insurance] policy must be interpreted to give effect to the mutual intent of the

1  parties at the time of contracting, and such intent is ascertained, if
2  possible, from the 'clear and explicit' language of the contract." <u>St.</u>
3  <u>Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co.</u>, 111 Cal. App. 4th 1234,
4  1243 (2003) (quoting <u>St. Paul Fire & Marine Ins. Co. v. Am. Dynasty</u>
5  <u>Surplus Lines Ins. Co.</u>, 101 Cal. App. 4th 1038, 1048 (2002)). "'The
6  [insurance policy] is to be construed in a manner which gives a
7  reasonable meaning to all its provisions in a natural, reasonable and
8  practical manner, having reference to the risk and subject matter and to
9  the purposes of the entire contract.'" <u>Barrett v. Farmers Ins. Grp.</u>, 174
10 Cal. App. 3d 747, 750–51 (1985) (quoting <u>Home Indem. Co. v. Leo L. Davis,</u>
11 <u>Inc.</u>, 79 Cal. App. 3d 863, 869 (1978)).

12 **A. Basic Coverage Under Policy I's Uninsured Motorists Clause**

13        "Before even considering exclusions, a court must examine the
14 coverage provisions to determine whether a claim falls within [the policy
15 terms]." <u>Atl. Mut. Ins. Co. v. Ruiz</u>, 123 Cal. App. 4th 1197, 1208 (2004)
16 (alteration in original) (internal quotation marks omitted). "The insured
17 has the burden of establishing that a claim, unless specifically
18 excluded, is within basic coverage, while the insurer has the burden of
19 establishing that a specific exclusion applies." <u>Minkler v. Safeco Ins.</u>
20 <u>Co. of Am.</u>, 49 Cal. 4th 315, 322 (2010).

21        Plaintiff has met his initial "burden of establishing that [the
22 June 27 accident]. . . is within basic coverage" under the terms of the
23 Endorsement. <u>Id.</u> Policy I states in pertinent part that AMCO "will pay
24 compensatory damages which an 'insured' is legally entitled to recover
25 from the owner or operator of an 'uninsured motor vehicle' because of:
26 [] 'Bodily injury' sustained by an 'insured' and caused by an accident."
27 (Policy I, at page 7 of 15, as amended by UIMC Amendment, at page 1 of
28 5.) "'Insured' as used in this endorsement means . . . [y]ou or any

'family member.'" (<u>Id.</u>, as amended by UIMC Amendment, at page 1 of 5.) "'Bodily injury' means bodily harm, sickness or disease, including death that results." (<u>Id.</u>, at page 2 of 15, as amended by Policy Amendment, at page 1 of 4.) Here, Plaintiff is the "insured," (<u>see</u> Def.'s SUF # 1; Pl.'s SUF # 1), and Plaintiff sustained "bodily injury" that was "caused by an accident." (Def.'s SUF # 12; Pl.'s SUF # 12). Thus, unless an exclusion applies, Plaintiff can recover for injuries sustained in the June 27 accident under Policy I's Endorsement.

**B. Policy I's Exclusionary Clause**

"Exclusion clauses 'remove coverage for risks that would otherwise fall within the insuring clause.'" <u>Ruiz</u>, 123 Cal. App. 4th at 1208 (quoting <u>Waller v. Truck Ins. Exch., Inc.</u>, 11 Cal. 4th 1, 16 (1995)). "[T]here is no doubt of the right of the insurance companies to limit, in accordance with [California Insurance Code] section 11580.2, the coverage of their policies, and when they have done so the plain language of the limitations must be respected." <u>Interinsurance Exch. of Auto. Club of S. Cal. v. Velji</u>, 44 Cal. App. 3d 310, 314-15 (1975). "An exclusionary clause must pass muster under two independent tests: '(1) The exclusion must be *conspicuous* and (2) the language of the exclusion must be *plain* and *clear*.'" <u>Elwood v. Aid Ins. Co.</u>, 880 F.2d 204, 207 (9th Cir. 1989) (quoting <u>Ponder v. Blue Cross of S. Cal.</u>, 145 Cal. App. 3d 709, 719 (1983)). "When the facts are undisputed, . . . the interpretation of a contract, including whether an insurance policy is ambiguous or whether an exclusion or limitation is sufficiently conspicuous, plain, and clear, is a question of law." <u>Hervey v. Mercury Cas. Co.</u>, 185 Cal. App. 4th 954, 962-63 (2010).

//

//

**1) "Conspicuous" Requirement**

"'A coverage limitation is conspicuous when it is positioned and printed in a manner that will attract the reader's attention.'" Ortega v. Topa Ins. Co., 206 Cal. App. 4th 463, 476 (2012) (quoting Boghos v. Certain Underwriters at Lloyd's of London, 36 Cal. 4th 495, 505 (2005)). "[The California] Supreme Court held an exclusion clause conspicuous as a matter of law when it was found in a section under the bold face heading 'Exclusions,' in printing the size and intensity identical to the rest of the policy." Cal-Farm Ins. Co. v. TAC Exterminators, Inc., 172 Cal. App. 3d 564, 577-78 (1985) (citing Nat'l Ins. Underwriters v. Carter, 17 Cal. 3d 380, 384-85 (1976)). In other cases, similar findings have been made. Zurich Ins. Co. v. Smart & Final Inc., 996 F. Supp. 979, 987 (N.D. Cal. 1998) ("[A]lthough in a different section of the policy than the insuring clause to which it relates, the exclusion clause is found under [a] bold face heading . . . and . . . is printed in the same size and intensity as the rest of the policy, and, therefore, is conspicuous as a matter of law.") (citing Carter, 17 Cal. 3d at 384-85); Universal City Studios Credit Union v. Cumis Ins. Soc'y, Inc. ("Cumis"), 208 Cal. App. 4th 730, 742 (2012) (finding an exclusion "conspicuous" when it "appeared in the section of the [document] entitled 'EXCLUSIONS,' us[ed] the same size and style of typeface that described the [document]'s 'COVERAGES'[, and] was exclusion number 14 out of a total of 35").

Defendant argues that Policy I's UIMC Amendment includes an exclusion (the "Policy I Exclusion") that is "conspicuous because it is located exactly where an objectively reasonable insured would expect to find it, . . . under a caption clearly entitled [**EXCLUSIONS**], in bold print and capitalized letters, [and] [it] is the first exclusion listed

in this section ["Uninsured Motorists Coverage–California"]." (Id. 16:24–17:1.) Plaintiff argues "there is no mechanism in the Policy that provides [Plaintiff] with clear and conspicuous notification that his UIM coverage limits might be reduced if he were to become married during the Policy [I] period." (Pl.'s Response in Opp'n to Def.'s Mot. ("Pl.'s Opp'n") 9:19–21.) However, Plaintiff does not specifically refer to any attributes of the Policy I Exclusion in support of his argument that it is not conspicuous. (See id.)

The Policy I Exclusion is conspicuous since it is under the bold heading "**EXCLUSIONS**," is in print that is "the same size and intensity" as is used throughout Policy I, and is listed as the first exclusion under the heading "**EXCLUSIONS**" in the Uninsured Motorists Coverage Amendment. Policy I, at page 7 of 15, as amended by UIMC Amendment, at page 2 of 5; see Smart & Final Inc., 996 F. Supp. at 987; Carter, 17 Cal. 3d at 384–85; Cumis, 208 Cal. App. 4th at 742; TAC Exterminators, Inc., 172 Cal. App. 3d at 577–78.

**2) Whether an Ambiguity Exists Preventing AMCO from Satisfying the "Plain and Clear" Requirement**

**a. Relevant Policy Term**

Defendant and Plaintiff both argue that Perez falls under the definition of "family member" in Policy I. (Def.'s Mot. for Summ. Judg. ("Def.'s Mot.") 18:8–20:6; Pl.'s Opp'n 8:5–10.) The "Definitions" section of Policy I defines "family member" as follows: "'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child." (Policy I, at page 2 of 15 (emphasis added).) "You" and "your" are terms defined earlier in the "Definitions" section as follows: "Throughout this policy, 'you' and 'your' refer to: 1. Any 'named insured' shown in the

Declarations; and 2. Any spouse if a resident of the same household." (Id., as amended by Policy Amendment, at page 1 of 4.) Since the definition of "family member" includes the words "you" and "your," a person cannot fall under both definitions. Gray1 CPB, LLC v. Kolokotronis, 202 Cal. App. 4th 480, 487 (2011) ("'The Court has a duty to construe every provision of a written instrument as to give force and effect, not only to every clause but to every word in it, so that no clause or word may become redundant.'" (quoting Pico Citizens Bank v. Tafco, Inc., 165 Cal. App. 2d 739, 746 (1958)); see Cal. Code Civ. Proc. § 1858 ("[W]here there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."). Thus, the salient argument is whether Perez falls under the Policy I definition of "you." The parties argue different positions on the meaning of the term "you"; Plaintiff indicates the term is not plain and clear and is ambiguous.

### b. Ambiguity and "Plain and Clear" Requirement

"The [plain-and-clear] test requires that 'the substance of the exclusion must be stated in words that convey the proper meaning to persons expected to read the contract.'" Elwood, 880 F.2d at 207 (quoting Ponder, 145 Cal. App. 3d at 719). "The language itself must be plain and clear. This means more than the traditional requirement that contract terms be 'unambiguous.' Precision is not enough. Understandability is also required." Haynes v. Farmers Ins. Exch., 32 Cal. 4th 1198, 1211 (2004); see Esparza v. Burlington Ins. Co., 866 F. Supp. 2d 1185, 1203 (E.D. Cal. 2011) ("'To be plain and clear, the substance of the exclusion must be precise and understandable.'" (quoting Travelers Ins. Co. v. Lesher, 187 Cal. App. 3d 169, 184 (1986)). An exclusionary clause must be "written in plain English . . . . It [may] not contain terms of art

12

1 unique to insurance policies." <u>Broberg v. Guardian Life Ins. Co. of Am.</u>,

2 171 Cal. App. 4th 912, 927 (2009).

3        "[T]he well-established canon that limitations and exclusions

4 on coverage must be 'conspicuous, plain and clear'" has a "corollary

5 . . . rule under which the California courts give prominence to the

6 unambiguous plain language of insurance policies." <u>In re K F Dairies,</u>

7 <u>Inc. & Affiliates</u>, 224 F.3d 922, 927 (9th Cir. 2000) (quoting <u>Gray v.</u>

8 <u>Zurich Ins. Co.</u>, 65 Cal. 2d 263, 271 (1966)). An insurance "policy must

9 be examined as a whole, and in context, to determine whether an ambiguity

10 exists." <u>Minkler</u>, 49 Cal. 4th at 322. "'A policy provision is ambiguous

11 *only* if it is susceptible to two or more reasonable constructions despite

12 the plain meaning of its terms within the context of the policy as a

13 whole.'" <u>Atl. Mut. Ins. Co. v. Ruiz</u>, 123 Cal. App. 4th 1197, 1203 (2004)

14 (quoting <u>Palmer v. Truck Ins. Exch.</u>, 21 Cal. 4th 1109, 1115 (1999)). If

15 a policy term is susceptible to multiple "reasonable constructions," it

16 is deemed "ambiguous," which then requires that "the term be construed

17 against [the insurer] and in favor of the insured." <u>Nat'l Auto. & Cas.</u>

18 <u>Ins. Co. v. Underwood</u>, 9 Cal. App. 4th 31, 38–39 (1992). "'[A]mbiguities

19 are generally construed against the party who caused the uncertainty to

20 exist (i.e., the insurer) in order to protect the insured's reasonable

21 expectation of coverage.'" <u>Ruiz</u>, 123 Cal. App. 4th at 1203 (quoting

22 <u>Palmer</u>, 21 Cal. 4th at 1115).

23        "The interpretation of a contract, including the resolution of

24 any ambiguity, is solely a judicial function unless the interpretation

25 turns on the credibility of extrinsic evidence." <u>Am. Alt. Ins. Corp. v.</u>

26 <u>Superior Court</u>, 135 Cal. App. 4th 1239, 1245 (2006). "[W]hen policy

27 language is ambiguous, rules applicable to resolving ambiguity control."

28 <u>St. Paul Mercury Ins. Co.</u>, 111 Cal. App. 4th at 1243. However, "'[t]here

cannot be an ambiguity per se, i.e., an ambiguity unrelated to an application.'" Cal. Dairies Inc. v. RSUI Indem. Co., 617 F. Supp. 2d 1023, 1031 (E.D. Cal. 2009) (quoting Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 5 Cal. 4th 854, 867 (1993)).

Plaintiff argues that "based upon the Policy [I] language, totality of the circumstances, the chronology of events, and the intent of the parties, . . . [Plaintiff] had a reasonable expectation that his UIM coverage would not be affected by his marriage to Perez until renewal of [Policy I]," (Pl.'s Opp'n 6:11-13), and that "[a]ny change of circumstance, including but not limited to [Plaintiff]'s marriage to Perez during the policy period, did not change the risk taken on by [Defendant]." (Id. 6:19-21; see id. 3:16-7:4 (detailing Plaintiff's argument regarding ambiguity in the Policy I Exclusion).) Plaintiff also argues that "[a]bsent a change . . . in risk to AMCO combined with a lack of a clear and conspicuous notification to [Plaintiff] of an adverse consequence based upon his marriage to his UIM coverage during the Policy [I] period[, Policy I] is ambiguous and the exclusion argued by AMCO should not be applied." (Id. 7:1-4.) Plaintiff further argues:

> [Policy I] only defines a spouse in the present tense as existing on the date of issuance of the policy without taking into account or making any reference to the fact that the named insured may acquire a spouse during the policy period. In addition, [Policy I] only defines a "family member" in the present tense as existing on the date that the policy was issued.

(Id. 8:3-7.) The gravamen of this argument of Plaintiff's is that the definitions of the terms "spouse" and "family member" are ambiguous since Policy I does not unequivocally state the date upon which the terms must be construed when determining coverage. (See id.)

Although Plaintiff argues that the term "spouse" is "only define[d] . . . in the present tense," Policy I does not define the term

14

"spouse." (<u>See</u> Policy I.) Rather, the word "spouse" is included in the definition of the term "you." (Policy I, at page 2 of 15, as amended by Policy Amendment, at page 1 of 4.) If a contract does not define a word, then that word is "to be understood in [its] ordinary and popular sense." Cal. Civ. Code § 1644. Further, although Policy I defines the term "family member," that definition is not relevant to the coverage dispute at issue since Perez cannot fall under the definition of "family member," as previously discussed.

Defendant argues "the language at issue is . . . plain and clear." (Def.'s Mot. 17:26-27.) Defendant also argues that "Plaintiff does not . . . argue the exclusion is not . . . written in plain and clear language easily understandable by a layperson." (Def.'s Reply to Pl.'s Opp'n ("Def.'s Reply") 9:18-10:2, ECF No. 11.) Further, Defendant argues "Plaintiff['s] conten[tion that] the 'Explaining Changes in Your Renewal Premium' section renders the [Policy I E]xclusion ambiguous . . . does not genuinely address how a layperson would understand the policy as a whole." (<u>Id.</u> 2:9-11.)

Defendant contends that "[c]ontrary to Plaintiff's suggestions, exclusions in an insurance policy cannot be deemed ambiguous simply because they are contrary to an insured's reasonable expectations. Plaintiff must first show his proposed interpretation of the policy is reasonable [before] point[ing] to objectively reasonable expectations of coverage as an interpretative tool." (Def.'s Reply 6:2-6 (citing <u>Fire Insurance Exchange v. Superior Court</u>, 116 Cal. App. 4th 446, 456-57 (2004).) <u>Fire Insurance Exchange</u> states: "An expectation of coverage . . . cannot *create* an ambiguity; it is merely an interpretive tool used to resolve an ambiguity once it is found to exist." <u>Id.</u> at 456-57 (citing <u>Wolf Mach. Co. v. Ins. Co. of N. Am.</u>, 133 Cal. App. 3d 324, 328 (1982)).

Defendant also argues that "[t]he [Policy I] Exclusion and definitions at issue are explicit and not reasonably susceptible to the interpretation proposed by [Plaintiff]." (Def.'s Mot. 10:22-23.) Defendant further argues that the Policy I Exclusion applies since "[Plaintiff] alleges he sustained bodily injury while he was occupying a vehicle owned by [Perez], and it is clear the vehicle owned by [Perez] was not insured under [Policy I]." (Id. 10:28-11:2.) Plaintiff argues that the Policy I terms should be interpreted "as [they] exist[ed] on the date that the policy was issued," (Pl.'s Opp'n 8:6-7), whereas Defendant argues that "[t]he [Policy I] Exclusion is not reasonably susceptible to [Plaintiff]'s interpretation that the use of present-tense language means the [Policy I Exclusion] applies only if [Plaintiff] was married at the time [Policy I] issued." (Def.'s Mot. 11:4-6.)

Neither party cites authority that clearly supports its position regarding whether changes in marital status take effect during a policy period or when the policy is renewed. However, at least two California cases indicate that changes in marital status during the policy period take effect immediately as far as coverage under the policy is concerned. In Reserve Insurance Co. v. Apps, 85 Cal. App. 3d 228 (1978), the appellate court affirmed the trial court's decision that an insurance policy provided coverage to an insured's wife under the policy terms. Id. at 232. Under the policy at issue in Apps, if the insured and his wife were residents of the same household, the insurer would have to afford coverage under the policy term providing coverage "to any individual named in Item 1 of the declarations (here [insured]) and . . . his spouse, if a resident of the same household." Id. at 231 (internal quotation marks omitted). The court noted that "[i]f an insured should marry during the period a policy is in force, the insurer could hardly

16

deny coverage" if "[t]he policy purports to provide coverage to . . . '[the insured] and . . . his spouse.'" Id.

Further, in International Service Insurance Co. v. Gonzales, 194 Cal. App. 3d 110 (1987), the appellate court upheld the trial court's ruling, which included the conclusion that the defendant's ex-wife "had no interest in the [insurance] policy when it was renewed . . . as she was no longer a 'family member,' a spouse[,] or a resident of the name[d] insured's household." Id. at 116. In Gonzales the insured argued that "the policy [i]s ambiguous as it d[oes] not expressly state that a spouse loses insured status if he or she separates or divorces," "[the policy] does not inform the parties of the effect of divorce," and "the word 'divorce' is absent from the [policy]." Id. at 115, 117. However, the court found "the use of the word 'spouse' [in the policy] is sufficient to apprise the parties that marriage is a prerequisite to coverage as a spouse of the named insured. It follows if one divorces, he or she is no longer a 'spouse.'" Id. at 117. "Although she was initially insured as the spouse of [the insured], [the insured's ex-wife] lost coverage when the marriage was dissolved . . . ." Id. at 119 (emphasis added).

Like the policy at issue in Gonzales, Policy I includes the word "spouse" in its definition of "you," which is at issue in the instant case: "Throughout this policy, 'you' and 'your' refer to: [] Any 'named insured' shown in the Declarations; and [] Any spouse if a resident of the same household." (Policy I, at page 2 of 15, as amended by Policy Amendment, at page 1 of 4.) Thus, under the reasoning of Gonzales, which states that "if one divorces, he or she is no longer a 'spouse,'" "the use of the word 'spouse' [in Policy I] is sufficient to apprise the parties that" when Plaintiff married Perez, she immediately qualified as a "spouse" under Policy I. Gonzales, 194 Cal. App. 3d at

117; accord Mitroff v. United Servs. Auto. Ass'n, 72 Cal. App. 4th 1230, 1239 (1999) (denying liability under insurance policy when "[a]t the time of the specific incidents alleged in [plaintiff]'s complaint, she lived in appellant's house and was his wife" and "policy exclude[d] liability for bodily injury to [appellant]'s spouse 'if a resident of the same household'" (emphasis added)); Kibbee v. Blue Ridge Ins. Co., 69 Cal. App. 4th 53, 61 (1999) (determining that the issue of whether insurance coverage applied hinged on where the plaintiffs had resided "at the time of the accident"); Nat'l Auto. & Cas. Ins. Co. v. Underwood, 9 Cal. App. 4th 31, 40 (1992) (basing its discussion of possible definitions of "resident" on where the injured minors had resided "at the time of the accident"); Safeco Ins. Co. v. Gibson, 211 Cal. App. 3d 176, 182 (1989) ("The trial court found that the minor victim was a resident of his father's household at the time the accident occurred." (emphasis added)); Nw. Nat'l Cas. Co. v. Davis, 90 Cal. App. 3d 782, 784 (1979) (determining that the relevant inquiry in deciding whether a party was a "resident" of a policyholder's household was "whether [the party] was, at the time of the accident, a 'resident' of the [policyholder's] household" (emphasis added)); Menchaca v. Farmers Ins. Exch., 59 Cal. App. 3d 117, 128 (1976) (finding that "[u]nder these circumstances," which included assessing the parties' marital relationship on the date of the accident, "Lara was not the 'spouse' of Menchaca"); Interinsurance Exch. of Auto. Club of S. Cal. v. Velji, 44 Cal. App. 3d 310, 314 (1975) (finding that "[a]ppellant and her husband were members of the same household on August 8, 1970" and holding that "[s]ince appellant was in an accident while riding in her husband's car, and since he f[ell] within the definition of an insured under the policy, . . . the policy exclusion . . . should apply"); Allstate Ins. Co. v. Smith, 9 Cal. App. 3d 898, 900 (1970) ("The

question presented is whether [decedent] was a member of the household of his parents <u>at the time of his death</u>, and [thus] covered by the policy." (emphasis added)); <u>Cal-Farm Ins. Co. v. Boisseranc</u>, 151 Cal. App. 2d 775, 781, 777 (1957) (conducting a fact-intensive inquiry to answer "[t]he precise question [of] whether, under any reasonable interpretation of the policy, was James, <u>at the time of the accident</u>, a 'resident' of the 'household' of August?" even after an initial finding that "[w]hen the policy was executed in 1949 the Boisseranc family . . . lived as a family unit on the insured premises" (emphasis added)); <u>see</u> <u>Hunter v. N. Am. Co. for Life & Health Ins.</u>, 671 F. Supp. 2d 1182, 1187 (S.D. Cal. 2009) ("[O]nce a prerequisite to coverage no longer exists, coverage ceases to exist." (citing <u>Gonzales</u>, 194 Cal. App. 3d at 115)); <u>Bouton v. USAA Cas. Ins. Co.</u>, 167 Cal. App. 4th 412, 416–17 (2008) (attempting to prove he was covered under an insurance policy, plaintiff "stated, that <u>at the time of the accident</u> . . . [plaintiff] was a permanent resident of the household, and a blood relative[] of [insured]" (emphasis added)); <u>Bjork v. State Farm Fire & Cas. Co.</u>, 157 Cal. App. 4th 1, 4 (2007) (justifying its denial of coverage to the plaintiff, the defendant insurer "stated that because [injured party] was [the plaintiff]'s daughter and resided with her <u>when the alleged [incident] occurred</u>, [the injured party] was considered an insured . . . [and] exclu[ded]" (emphasis added)); <u>cf.</u> <u>Bullard v. Cal. State Auto. Ass'n</u>, 129 Cal. App. 4th 211, 216–19 (2005) (upholding trial court's ruling that revision to Cal. Ins. Code § 11580.2 that went into effect on January 1, 2004, and was not deemed to apply retroactively, did not apply to accident occurring on June 16, 2002); <u>Vargas v. Athena Assurance Co.</u>, 95 Cal. App. 4th 461, 467 (2001) ("The currently applicable version of the statute [§ 11580.1] . . . requires coverage only for vehicles owned or

legally controlled by the named insured."); <u>Allstate Ins. Co. v. Orlando</u>,
262 Cal. App. 2d 858, 864 (1968) ("As to claims arising out of accidents
occurring subsequent to th[e] date [of the statute's enactment] made
under a[n] [insurance] policy issued prior to the [statute's] effective
date . . . , the [statute] can be constitutionally applied . . . .");
<u>Interinsurance Exch. of Auto. Club of S. Cal. v. Bailes</u>, 219 Cal. App.
2d 830, 832 (1963) (ruling that "the provision with reference to physical
contact was void as being in conflict with section 11580.2 of the
Insurance Code as that section read <u>at the time of the accident</u>"
(emphasis added)).

Since Perez qualified as a "spouse" as of her marriage to
Plaintiff on December, 31, 2009, construing the Policy I terms on June
27, 2010 (the date of the accident underlying Plaintiff's claim), results
in an unambiguous definition of "you." Policy I defines "'you' and
'your'" as "refer[ring] to [a]ny 'named insured' shown in the
Declarations; and [a]ny spouse if a resident of the same household."
(Policy I, at page 2 of 15, as amended by Policy Amendment, at page 1 of
4.) It is undisputed that Perez was married to Plaintiff on June 27,
2010, and that she was a resident of Plaintiff's household on that date.
(Def.'s SUF # 9, 13; Pl.'s SUF # 9, 13.) Thus, the exclusionary language
is "plain and clear," as required under California law, since the
exclusion "is written in plain English [and] does not contain terms of
art unique to insurance policies." <u>Broberg</u>, 171 Cal. App. 4th at 927.
Since the Policy I Exclusion is conspicuous, plain and clear, as well as
unambiguous, it applies to the June 27 accident and precludes Plaintiff
from recovering under Policy I.

//

//

**D. Plaintiff's Additional Arguments**

Plaintiff also makes additional arguments. First, Plaintiff argues that coverage is dictated by "[t]he language set forth in Part C-Uninsured Motorist Coverage 'Other Insurance'" since "the vehicle that he was occupying on the date of loss was covered by 'other applicable similar insurance' . . . ." (Pl.'s Opp'n 11:7-14.) Under California law, however, "the term 'similar' in [California Insurance Code § 11580.2](c)(2) encompasses amount of coverage, and not just type of coverage." CalFarm Ins. Co. v. Wolf, 86 Cal. App. 4th 811, 817 (2001). Policy I had UIM limits of $500,000, (Def.'s SUF # 2; Pl.'s SUF # 2), and Policy II had UIM limits of $100,000. (Def.'s SUF # 25; Pl.'s SUF # 25.) Since Plaintiff and Perez had different amounts of UIM coverage, § 11580.2(c)(2) does not apply.

Second, Plaintiff argues that under Policy I's "Part F-General Provisions: Two or More Auto Policies" and § 11580.2(d), Plaintiff is entitled to coverage "on a prorated basis." (Pl.'s Opp'n 12:25.) However, Part F of Policy I and § 11580.2(d) detail California's "anti-stacking" provision, which prevents "a claimant's repeated recovery for his injuries [as well as] a claimant's attempt to recover his claim from a second policy where recovery from a first policy is inadequate to compensate for his injuries." Allstate Ins. Co. v. Mercury Ins. Co., 154 Cal. App. 4th 1253, 1259 (2007). An anti-stacking provision only applies, however, "if the insured has insurance available to the insured under more than one uninsured motorist coverage provision." Cal. Ins. Code § 11580.2(d) (emphasis added). It is not used to determine that a given policy applies to an accident in the first place. Thus, Plaintiff's argument–that Part F of Policy I and § 11580.2(d) afford him UIM coverage under Policy I–is not persuasive.

1         Third, Plaintiff argues that "there is no mechanism in [Policy

2   I] that provides [Plaintiff] with clear and conspicuous notification that

3   his UIM coverage limits might be reduced if he were to become married

4   during the [p]olicy period." (Pl.'s Opp'n 9:19–21.) Plaintiff also argues

5   that the "Important Insurance Information" policy attachment relating to

6   premiums "notifi[ed] . . . Plaintiff that marriage does not affect

7   [Policy I coverage] until time of renewal" and that "no language set

8   forth anywhere in [Policy I] . . . requires [Plaintiff] to notify

9   [Defendant] of a change in his marital status prior to renewal." (<u>Id.</u>

10  5:6–8; <u>see</u> Policy I (SN 0559C (11–08)), at page 1 of 2.) Defendant

11  responds by quoting the "Changes" provision under Part F of Policy I:

12       CHANGES
     A.   Premium Changes

13            The premium for this policy is based on
          information we have received from you or other

14            sources. You agree:
          1. that if any of this information material to

15            the development of the policy premium is
          incorrect, incomplete or changed, we may

16            adjust the premium accordingly during the
          policy period.

17            2. to cooperate with us in determining if this
          information is correct and complete, and to

18            advise us of changes in this information.

19  (Def.'s Reply 4:20–5:3 (quoting Policy I, at AA 0001 (09–86), at page 12

20  of 15, as amended by "Changes Provision"(AA 0007 (11–92), at page 1 of

21  1).) "Contrary to Plaintiff's arguments, this provision clearly conveys

22  the policy premium *can be adjusted during the policy period* if there is

23  any change material to the development of the premium . . . includ[ing]

24  marital status." (<u>Id.</u> 5:9–11.) Further, Defendant argues that even if

25  "changes in marital status can affect the cost of a premium does not

26  mean[] if the insured marries during the policy period, the new spouse's

27  vehicle automatically is deemed listed as [an] insured vehicle." (<u>Id.</u>

28  5:21–24.)

Plaintiff cites to two cases that held that "an insurance company is bound by a greater coverage in an earlier policy when a renewal policy is issued but the insured is not notified of the specific reduction in coverage." Allstate Ins. Co. v. Fibus, 855 F.2d 660, 663 (9th Cir. 1988); see Sorensen v. Farmers Ins. Exch., 56 Cal. App. 3d 328, 334 (1976). These cases are inapposite since they detail situations in which the insureds had a policy in effect that granted a particular level of coverage, which the insurers then tried to eliminate without affording the insureds proper notice. Fibus, 855 F.2d at 663; Sorensen, 56 Cal. App. 3d at 334. Plaintiff misapplies these courts' rulings—that lack of proper notice prevents a new insurance policy from taking effect—to his own situation, which entails a contract term that Plaintiff argues is ambiguous.

Fourth, Plaintiff argues that "[Defendant] should be estopped from denying coverage based upon the fact that when [Plaintiff] contracted for [Policy I,] [Defendant]'s agent should have advised [Plaintiff] that if he became injured in his fiance's vehicle after their marriage he would not be covered under his policy for UIM benefits." (Pl.'s Opp'n 13:2-7 (emphasis added).) This argument relies on Defendant's silence concerning the alleged omission from the policy. "It is well established that mere silence will not create an estoppel, unless there is a duty to speak." Spray, Gould & Bowers v. Assoc. Int'l Ins. Co., 71 Cal. App. 4th 1260, 1268 (1999). Plaintiff has alleged no facts indicating that Defendant owed Plaintiff "a duty to speak." Further, "[i]n the absence of an express agreement to ensure adequate coverage or a holding out by the agent to assume greater duties otherwise implied in the agency relationship, the onus is . . . squarely on the insured to inform the [insurer's] agent of the insurance he requires." Paper Savers,

1  Inc. v. Nasca, 51 Cal. App. 4th 1090, 1096 (1996) (collecting cases). The
2  agent has "'no duty . . . to advise the insured on specific insurance
3  matters.'" Ahern v. Dillenbeck, 1 Cal. App. 4th 36, 43 (1991) (quoting
4  Jones v. Grew, 189 Cal. App. 3d 950, 954 (1987)). No facts support the
5  contention that Plaintiff "inform[ed] [Defendant's] agent" that "he
6  require[d]" UIM insurance, Nasca, 51 Cal. App. 4th at 1096, if "he became
7  injured in his fiance's vehicle after their marriage" but before Policy
8  I expired. (Pl.'s Opp'n 13:5-6.) Thus, Plaintiff's estoppel argument
9  fails.

10        Fifth, Plaintiff responds to Defendant's argument that
11  "[California] Insurance Code § 11580.2 does not authorize [Plaintiff]'s
12  recovery of UIM benefits under [Policy I] because the policy does not
13  insure the vehicle occupied by [Plaintiff] at the time of the accident."
14  (Def.'s Mot. 20:12-14.) Plaintiff argues that § 11580.2 "is inapplicable
15  and that [Plaintiff] is not excluded from making a claim for UIM
16  coverage." (Pl.'s Opp'n 10:26-27.) Plaintiff argues that the Policy I
17  Exclusion does not apply since "[Plaintiff] was not married when he
18  renewed his policy, was not an owner of the vehicle he occupied at the
19  time of the accident, and had an expectation of coverage for the policy
20  that he purchased," (id. 11:1-3); further, Plaintiff argues he should be
21  afforded coverage under Parts C and F of Policy I. (Id. 11:5-12:25.)

22        Defendant argues that "[s]imilar claims were rejected by the
23  court in Sutton v. Farmers Insurance Exchange which upheld as valid, in
24  the face of similar 'other insurance' and 'two or more auto policies'
25  provisions, an exclusion virtually identical to the one at issue herein
26  . . . ." (Def.'s Mot. 12:26-13:1.) The policy exclusion at issue in
27  Sutton provided: "This coverage does not apply to bodily injury sustained
28  by a person: [¶] 1. While occupying any vehicle owned by you or a family

member for which insurance is not afforded under this policy or through being struck by that vehicle." <u>Sutton</u>, 35 Cal. App. 4th at 1803. This language is virtually identical to that in the Policy I Exclusion, which provides in relevant part: "We do not provide Uninsured Motorists Coverage for 'bodily injury' sustained by any 'insured' . . . [w]hile 'occupying' or when struck by . . . [a]ny motor vehicle . . . owned by you or any 'family member' which is not insured for this coverage under this policy." (Policy I, at page 7 of 15, as amended by UIMC Amendment, at page 2 of 5.) Defendant cites to the holding of <u>Sutton</u>: "Plaintiff . . . sustained bodily injury while occupying a vehicle he owned but 'for which insurance [was] not afforded under [the Taurus] policy.' Thus, he is barred from claiming coverage under the policy." (Def.'s Mot. 13:6–9 (quoting <u>Sutton</u>, 35 Cal. App. 4th at 1804).) Defendant further notes that the policy at issue in <u>Sutton</u> also included provisions similar to Parts C and F of Policy I. (Def.'s Mot. 13:11–25 (quoting <u>Sutton</u>, 35 Cal. App. 4th at 1806 ("Nor are we deterred from our finding by the two aforementioned policy provisions relied upon by plaintiffs. Both the 'Other Insurance' and the 'Two or More Cars Insured' clauses address a situation which does not exist here—i.e. the situation where the accident or occurrence at issue is covered by more than one insurance policy. . . . Here, the underlying policy, the Taurus policy, is not applicable. Thus, neither are these provisions applicable.")).) Given the similar policy provisions and language between Policy I and the policy at issue in <u>Sutton</u>, as in <u>Sutton</u>, "[s]ince [P]laintiff['s] claim is based on an accident involving the [BMW] and the [BMW] is not an insured motor vehicle under the policy for which coverage is sought, the[] claim is barred." <u>Sutton</u>, 35 Cal. App. 4th at 1806.

//

## V. CONCLUSION

For the reasons stated above, summary judgment is granted in favor of Defendant.

## VI. OPPORTUNITY TO RESPOND

Any party may file and serve written objections to any part of this tentative ruling no later than seven (7) days after the date on which this order is filed. Any objection must specify the requested correction, addition, and/or deletion. If no objection is filed, this tentative ruling will become final without further order of this Court, and the Clerk of Court will be directed to enter judgment for Defendant.

Dated:  January 8, 2013

GARLAND E. BURRELL, JR.
Senior United States District Judge